UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

JOHN KELLER,

    Plaintiff,

v.

CUMMINGS INC., THE INTERNATIONAL
SIGN SERVICE d/b/a CUMMINGS SIGNS,

    Defendant.
                                            /

Case No. 08-10264

Honorable Nancy G. Edmunds

**ORDER DENYING DEFENDANT'S MOTION TO DISMISS FOR LACK OF
PERSONAL JURISDICTION [3]**

On December 10, 2007, Plaintiff John Keller filed a complaint against Defendant in Livingston County Circuit Court, alleging state-law claims of (1) breach of contract, (2) unjust enrichment, and (3) age discrimination in violation of Michigan's Elliott-Larsen Civil Rights Act, Mich. Comp. Laws §§ 37.2101, *et seq*. Defendant subsequently removed the matter here, asserting diversity jurisdiction. This matter is presently before the Court on Defendant's motion to dismiss for lack of personal jurisdiction, brought pursuant to Federal Rule of Civil Procedure 12(b)(2). For the reasons stated below, Defendant's motion to dismiss is DENIED.

**I.    Facts**

Plaintiff currently resides in Whitmore Lake, Michigan and is presently employed by Defendant, a Tennessee corporation with its principal place of business in Nashville, Tennessee. (Compl. ¶¶ 1, 2, 5.) Defendant, a commercial sign manufacturer, provides

design and installation services to customers nationwide, including Chevron and Texaco. (*Id.* ¶¶ 5-6.) Plaintiff has worked for Defendant for approximately four decades. (*Id.* ¶ 7.) While Plaintiff's previous positions with the company have included serving as Vice President of Sales, he is currently employed as a sales representative. (*Id.* ¶ 8.)

### A. 1999 Commission Agreement

In 1999, Plaintiff and Defendant entered into a verbal commission agreement whereby Plaintiff would receive a 1.25% commission on "all Defendant's business with the Chevron account." (*Id.* ¶¶ 9-10.)[1] Plaintiff asserts that he was living in Scottsdale, Arizona when he entered into the 1999 agreement. (Pl.'s Resp., Ex. A, Keller Aff. ¶ 7.) Plaintiff subsequently moved to Michigan in 2002. (*Id.* ¶ 4.)

### B. Plaintiff's Performance Under 1999 Commission Agreement

In June 2006, Defendant and Chevron entered into an agreement to update Chevron signs in the U.S. and Canada. (Compl. ¶ 12-13.) Leading up to this agreement, Plaintiff engaged in discussions and negotiations with Chevron on Defendant's behalf. (Pl.'s Resp., Ex. A, Keller Aff. ¶¶ 16-17.) These negotiations included email and telephone communications between Plaintiff in Michigan and Chevron personnel in California. (*Id.*) Plaintiff's efforts on behalf of Defendant regarding the agreement also included travel from Plaintiff's Michigan residence to cities in California, Florida, Arizona, and Texas in order to make presentations. (*Id.* ¶ 18.) Defendant paid for these travel expenses. (*Id.*) Currently, Plaintiff continues to correspond with Chevron regarding the agreement via mail and email

---

[1] The Chevron account included business with both Chevron and Texaco. (*Id.* ¶ 6.)

from his Michigan residence. Plaintiff has forwarded at least one of these emails to Defendant's personnel in Tennessee. (*Id.* ¶¶ 19-20.)

### C. Defendant's Alleged Breach of 1999 Commission Agreement and Alleged Violation of Michigan's Elliott-Larsen Civil Rights Action for Age Discrimination

Plaintiff submits that all commission payments at issue in this case arise out of this 2006 agreement between Defendant and Chevron that he helped negotiate and procure on Defendant's behalf. (Keller Aff. ¶ 15.) Though Plaintiff was paid a 1.25% commission following this agreement, Defendant started making only partial payments on Plaintiff's commission beginning in April 2007. (*Id.* ¶¶ 14-15.) Plaintiff disputes that he ever agreed to any reduction in his commission and alleges that Defendant's actions are designed to force Plaintiff to retire because of his age. (*Id.* ¶¶ 17-18.)[2] Specifically, Plaintiff contends that James Murray, Defendant's Vice President and Chief Marketing Officer, sent him a back-dated letter via email in October 2007. (*Id.* ¶¶ 10-12.) Murray's letter, dated April 24, 2007, refers to an alleged conversation between Plaintiff and Murray during which Plaintiff agreed to retire. (*Id.* ¶ 10; Pl.'s Resp., Ex. A1.) The letter also states that Plaintiff's commission percentages will be gradually reduced during 2007 in order to provide Plaintiff with a "soft landing." (*Id.*) Plaintiff disputes that he agreed to retire as detailed in the letter or that the letter was sent to him prior to October 2007. (Pl.'s Resp., Ex. A, Keller Aff. ¶¶ 10-12.) Also, upon receiving the October email, Plaintiff directly informed Murray that he rejected the proposal contained in the letter. (Keller Aff. ¶ 12.)

---

[2]Plaintiff was born in August 1932 and is currently 75 years old. (Compl. ¶ 20.)

Plaintiff also states that, on multiple occasions in 2007, Defendant mailed Plaintiff's commission checks to Plaintiff's residence post office box in Michigan. The July and September 2007 commission checks that were mailed to Plaintiff in Michigan were for less than the agreed-upon amount of commissions and give rise to the breach of contract claims in this lawsuit. (Keller Aff. ¶¶ 8-9; Pl.'s Ex. 1, 4/24/07 letter to Plaintiff in Michigan with postscript stating "a new check was mailed" to Plaintiff; Ex. 2, copies of checks mailed to Plaintiff in Michigan.) Plaintiff further avers that Defendant mailed to him in Michigan a copy of a direct deposit slip reflecting his commissions for December 2007, with a statement that "[t]his payment made to you . . . is not intended to waive any legal rights or remedies [Defendant] may have." (Keller Aff. ¶ 14; Pl.'s Ex. A3, Def.'s 1/15/08 letter to Plaintiff in Michigan.)

### D. Defendant's Alleged Contacts with Michigan on Non-Chevron Matters

Beyond his work with Chevron while living in Michigan, Plaintiff also notes that he has attempted to gain business with General Motors on behalf of Defendant. (Keller Aff. ¶ 21.) As part of this effort, Plaintiff and James Murray made a presentation to General Motors in Michigan in 2002. (*Id.* ¶ 22.) This presentation included a brochure, prepared by Defendant, which indicated that Defendant had a sales office located in Ann Arbor, Michigan. (*Id.* ¶ 23; Pl.'s Resp., Ex. A5.) Plaintiff contends that the sales office listed in the brochure actually refers to his nearby residence in Whitmore Lake, Michigan. (Pl.'s Resp., Ex. A, Keller Aff. ¶ 25.) Plaintiff's 2002 efforts on behalf of Defendant, however, did not produce business with General Motors. (*Id.* ¶ 26.)

## II. Standard of Review

Plaintiff has the burden of establishing this Court's personal jurisdiction over Defendant. *Nationwide Mut'l Ins. Co. v. Tryg Int'l Ins. Co.*, 91 F.3d 790, 793 (6th Cir. 1996). When the Court does not conduct an evidentiary hearing on this issue when deciding a Rule 12(b)(2) motion to dismiss, Plaintiff "need only make a prima facie showing of jurisdiction." *CompuServe, Inc. v. Patterson*, 89 F.3d 1257, 1262 (6th Cir. 1996). Plaintiff can satisfy this burden by "establishing with reasonable particularity sufficient contacts between [Defendant] and the forum state to support jurisdiction." *Neogen Corp. v. Neo Gen Screening, Inc.*, 282 F.3d 883, 887 (6th Cir. 2002) (internal quotes and citation omitted).

In reviewing a motion to dismiss brought pursuant to Fed. R. Civ. P. 12(b)(2), the Court views the pleadings and affidavits in the light most favorable to Plaintiff. *Air Prods. and Controls, Inc. v. Safetech Int'l, Inc.*, 503 F.3d 544, 549 (6th Cir. 2007) (citing *Theunissen v. Matthews*, 935 F.2d 1454, 1459 (6th Cir. 1991)). The Court "will not consider facts proffered by the defendant that conflict with those offered by [Plaintiff][.]" *Neogen*, 282 F.3d at 887 (citing *Serras v. First Tenn. Bank Nat'l Ass'n*, 875 F.2d 1212, 1214 (6th Cir. 1989)).

### III. Analysis

To establish personal jurisdiction in this diversity action, Plaintiff must show that the Court's exercise of personal jurisdiction is both (1) authorized by Michigan law, "the law of the state in which it sits, and (2) in accordance with the Due Process Clause of the Fourteenth Amendment." *Neogen*, 282 F.3d at 888. If Plaintiff can show that Defendant's acts or status fall within a provision of Michigan's long-arm statute, then Michigan law allows for the exercise of personal jurisdiction as far as due process permits. *Green v.*

*Wilson*, 565 N.W.2d 813, 816 (Mich. 1997).  In other words, once Plaintiff establishes that jurisdiction is proper under a provision of the long-arm statute, the state law and constitutional inquiries merge. *See Audi AG & Volkswagon of Am., Inc. v. D'Amato*, 341 F. Supp. 2d 734, 742 (E.D. Mich. 2004).

It is Defendant's position that this Court lacks personal jurisdiction over it.  Plaintiff disagrees, arguing that limited personal jurisdiction over Defendant is proper under Michigan's long-arm statute and is constitutionally permissible under the Due Process Clause of the Fourteenth Amendment.  This Court agrees that Plaintiff has made a prima facie showing of personal jurisdiction.

**A.  Michigan's Long-Arm Statute**

Under Michigan's long arm statute, the exercise of personal jurisdiction over a non-resident corporation may be "general" or "limited."  *Neogen*, 282 F.3d at 888 (citing Mich. Comp. Laws § 600.711 (general) and § 600.715 (limited))*.*  General jurisdiction extends to a defendant corporation "regardless of whether the claim at issue is related to its activities in the state or has an in-state effect," whereas limited jurisdiction "extends only to claims arising from the defendant's activities that were either within Michigan or had an in-state effect."  *Id.*

Michigan's long arm statute provides for limited jurisdiction over corporations in claims:

> arising out of the act or acts which create any of the following relationships:
>
> (1) The transaction of any business within the state.
>
> (2) The doing or causing any act to be done, or consequences to occur, in the state resulting in an action for tort.

6

> (3) The ownership, use, or possession of any real or tangible personal property situated within the state.
>
> (4) Contracting to insure any person, property, or risk located within this state at the time of contracting.
>
> (5) Entering into a contract for services to be performed or for materials to be furnished in the state by the defendant.

Mich. Comp. Laws § 600.715. Plaintiff has satisfied his burden in showing that the Court has limited personal jurisdiction over Defendant under §§ 600.715(1) and (2).

Defendant has transacted "business within the state." Mich. Comp. Laws § 600.715(1). This provision of the long-arm statute is satisfied by "the slightest act of business in Michigan." *Neogen*, 282 F.3d at 883 (internal quotation and citation omitted). On more than one occasion in 2007, Defendant communicated with Plaintiff in Michigan on issues related to his employment/commission agreement with Defendant, including mailing him his commission checks and emailing him the October 2007 letter that purported to confirm retirement conversations and detailed the manner in which Plaintiff's commissions –- originally set at 1.25% in 1999 –- would be gradually reduced. This constitutes sufficient business within Michigan to satisfy the minimal requirements of Mich. Comp. Laws § 600.715(1). Moreover, Plaintiff's breach of employment/commission contract claims "arise out of" Defendant's above-described transaction of business in Michigan. The same is true of Plaintiff's age discrimination claims brought pursuant to Michigan's Elliott-Larsen Civil Rights Act. *See Lanier v. Am. Bd. of Endodontics*, 843 F.2d 901, 909 (6th Cir. 1988) (observing that "[i]t is of no moment, for purposes of determining the existence of jurisdiction, what type of cause of action arises from a business transaction under Mich. Comp. Laws § 600.715(1).") Plaintiff's alleged acts of age discrimination arose

out of Defendant's above-described business transactions with Plaintiff in Michigan; i.e., Defendant's alleged unilateral attempts to reduce Plaintiff's agreed-upon commission and thus force him to retire because of his age.

Limited personal jurisdiction is also proper under Mich. Comp. Laws §§ 600.715(2). Plaintiff's alleged claim of age discrimination in violation of Michigan's Elliott-Larsen Civil Rights Act is in the nature of a tort action. *See McCalla v. Ellis*, 341 N.W.2d 525, 529 (Mich. Ct. App. 1983). The consequences of Defendant's alleged age discrimination are felt here in Michigan by Plaintiff. *See W. H. Froh, Inc. v. Domanski*, 651 N.W.2d 470, 477 (Mich. Ct. App. 2002) (observing that limited personal jurisdiction is proper "if either the tortious conduct or the injury" occurred in Michigan).

### B. Due Process

Even though limited personal jurisdiction is proper under Michigan's long arm statute, Plaintiff must also show that jurisdiction is constitutionally permissible. The Sixth Circuit has established that the due process determination entails a three-part inquiry:

> First, the defendant must purposefully avail himself of the privilege of acting in the forum state or causing a consequence in the forum state. Second, the cause of action must arise from the defendant's activities there. Finally, the acts of the defendant or consequences caused by the defendant must have a substantial enough connection with the forum state to make the exercise of jurisdiction over the defendant reasonable.

*Air Prods. and Controls*, 503 F.3d at 550 (quoting *S. Mach Co. v. Mohasco Indus., Inc.*, 401 F.2d 374, 381 (6th Cir. 1968)). Plaintiff argues that personal jurisdiction is consistent with due process because all three elements are satisfied. Defendant argues the opposite. The Court thus analyzes each factor, beginning with purposeful availment.

### 1. Purposeful Availment

To be subject to personal jurisdiction, a defendant must "purposefully avail [ ] itself of the privilege of conducting activities within the forum State, thus invoking the benefits and protections of its laws." *Kerry Steel, Inc. v. Paragon Indus., Inc.*, 106 F.3d 147, 150 (6th Cir. 1997) (quoting *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 475 (1985)). The purposeful availment requirement "ensures that a defendant will not be haled into a jurisdiction solely as a result of 'random,' 'fortuitous' or 'attenuated' contacts, or of the 'unilateral activity of another party or third person.'" *Neogen*, 282 F.3d at 889 (quoting *Burger King*, 471 U.S. at 475). Purposeful availment is satisfied where "the contacts proximately result from actions by the defendant *himself* that create a 'substantial connection' with the forum state." *Air Prod. and Controls*, 503 F.3d at 551 (quoting *Burger King*, 471 U.S. at 475) (emphasis in original). A defendant's physical presence in the state is not required. *Air Prod. and Controls*, 503 F.3d at 551 (citing *Burger King*, 471 U.S. at 475). While a defendant's contract with an out-of-state party alone is insufficient to establish minimum contacts, *Kerry Steel*, 106 F.3d at 151, the Court must also consider "prior negotiations and contemplated future consequences, along with the terms of the contract and the parties' actual course of dealing" when "determin[ing] whether the defendant purposefully established minimum contacts within the forum." *Calphalon Corp. v. Rowlette*, 228 F.3d 718, 722 (6th Cir. 2000) (internal quotations and citation omitted).

Here, Defendant was aware that it had a continuing obligation to pay commissions to Plaintiff, who it knew resided in Michigan. It is alleged that Defendant sought to unilaterally alter the terms of that continuing obligation while Plaintiff was residing in Michigan. It is further alleged that Defendant did so because of Plaintiff's age. Plaintiff has shown that it was Defendant who reached out to him in Michigan in an effort to alter their continuing

personal business relationship. It is Defendant's deliberate contacts with him in Michigan that give rise to Plaintiff's breach of contract and age discrimination claims. Moreover, Plaintiff alleges, Defendant knew that the "brunt of the harm" of its unilateral actions would be in Michigan. *Air Prods. and Controls*, 503 F.3d at 553. Accordingly, this Court concludes that Defendant's contacts with Plaintiff in Michigan "are the result of deliberate conduct that amounts to purposeful availment." *Id.* at 551.

**2. Plaintiff's Claims Arise From Defendant's Contacts With Michigan**

As to the second prong of the due process determination, the Sixth Circuit has articulated the appropriate standard in various ways; i.e., "whether the causes of action were 'made possible by' or 'lie in the wake of' the defendant's contacts," or "whether the causes of action are 'related to' or 'connected with' the defendant's contacts with the forum state." *Id.* at 553 (internal quotations and citations omitted). It has clarified that the standard is a lenient one. *Id.* As discussed above, Plaintiff's breach of employment contract and age discrimination claims are "related to" and "connected with" Defendant's contacts with Michigan.

**3. Exercise of Jurisdiction Over Defendant is Reasonable**

As to the third prong, the Court considers whether "the acts of the defendant or consequences caused by defendant . . . have a substantial enough connection with the forum state to make the exercise of jurisdiction over the defendant reasonable." *Id.* at 554 (internal quotation and citation omitted). It is well-established that, "where, as here, the first two criterion are met, an inference of reasonableness arises and only the unusual case will

not meet this third criteria."  *Id.* (internal quotations and citations omitted).  Factors considered by the Court in determining the reasonableness inquiry include:

> (1) the burden on the defendant;
> (2) the interest of the forum state;
> (3) the plaintiff's interest in obtaining relief; and
> (4) other states' interest in securing the most efficient resolution of the policy.

*Id.* at 554-55.

Any burden on Defendant to travel to Michigan, the forum state, is outweighed by this State's interest in affording one of its citizens protection from alleged age discrimination under its Elliott-Larsen Civil Rights Act and protection under Michigan law for an alleged breach of Plaintiff's employment agreement with Defendant for unilaterally reducing the agreed-upon commissions to be paid to Plaintiff in Michigan.  In light of these circumstances, the exercise of jurisdiction over Defendant is reasonable.

## IV. Conclusion

For the foregoing reasons, Defendant's motion to dismiss for lack of personal jurisdiction is DENIED.

s/Nancy G. Edmunds
Nancy G. Edmunds
United States District Judge

Dated:  June 12, 2008

I hereby certify that a copy of the foregoing document was served upon the parties and/or counsel of record on June 12, 2008, by electronic and/or ordinary mail.

s/Carol A. Hemeyer
Case Manager